(No. 6090. May 3, 1934.)

GEORGE H. SHAIL, Respondent, v. ARTHUR CROXFORD, Appellant.

[32 Pac. (2d) 777.]

Lewis A. Lee, for Appellant.

·W. A. Ricks, for Respondent.

MORGAN, J.—This is a suit by respondent against appellant and others to quiet title to a tract of land in Madison county. The trial resulted in a decree quieting respondent's title. The appeal is from the decree.

It is alleged in the complaint that respondent is, and for a long time has been, the owner and in possession of the land in question, describing it; that appellant and other defendants claim an estate or interest therein adverse to him, and that their claims are without right.

Appellant in his answer denies, generally, all the material allegations of the complaint except those contained in certain paragraphs wherein facts are alleged which have no bearing on the questions before us. The denial places in issue the allegations of ownership and possession of the property by respondent and that the claim thereto of appellant is without right. As an affirmative defense appellant alleges that his claim to the property is based on a mortgage thereon, given by the owners thereof to secure an indebtedness due to him, which is unpaid; that any interest, ownership or right of possession which respondent may have to the land is based on a tax deed executed by Madison county; that said deed is void; that the county had no interest in the land which it could legally convey, and that respondent obtained, and has, no right, title, interest or estate in the land by reason of such conveyance.

The record shows that January 5, 1931, the county treasurer and *ex-officio* tax collector executed two deeds con-

veying the property in question to the county, for delinquent taxes levied for 1926 and 1927, and that December 14, 1931, the county, for the express consideration of $100, conveyed it by deed, executed by the chairman of its board of commissioners, to respondent.

Appellant attacks the conveyances to the county, and by it to respondent, and in his brief of argument states the substance of the controversy, which we adopt, as follows:

"We are confronted with two principal questions for decision, and we believe the answer to these will be decisive in the case at bar.

"1. Did the county commissioners of Madison County, Idaho, acquire jurisdiction to sell the property described in plaintiff's exhibit 1, which is the subject of this litigation, by complying with all the prerequisite provisions of the law respecting the sale of county property and which resulted in the execution of said conveyance to plaintiff?

"2. Were the provisions of Sections 3257, 3258 as amended by Chapter 33, 1925 Session Laws, and 3259, I. C. S., fully complied with by the Treasurer of Madison County, Idaho, prior to executing and delivering to the county the two tax deeds?"

I. C. A., sec. 30–708, empowers boards of county commissioners in their respective counties:

"To sell or offer for sale at public auction at the courthouse door, after thirty days' previous notice given by publication in a newspaper of the county any property, real or personal, belonging to the county, not necessary for its use. . . . . "

It is further provided that sale of property acquired by tax deed shall, subject to the provisions of the section, vest in the purchaser all right, title and interest of the county in the property sold.

It is recited in the deed whereby the property was conveyed by the county to respondent:

"That Whereas, by an order duly given, made and entered by the board of county commissioners of said county, in meeting assembled on the 13th day of October, 1931, it was found and determined that the certain tract or parcel

of land belonging to said county and hereinafter particularly described, was not necessary for the use of said county, and that the same should therefore. pursuant to the provisions of Section 3423, Compiled Statutes of Idaho, as amended, be sold at public auction on the 20th day of November, 1931; and

"WHEREAS, Pursuant to said order and the statute in such case made and provided, the sale was advertised on the 15th day of October, 1931, being thirty days prior thereto, in The Rexburg Standard, a weekly newspaper published in said county (or posted in five public places of the said county), affidavit of the giving of which notice has been duly filed with the clerk of the board of county commissioners of said county; and

"WHEREAS, At the time advertised for said sale the said land was, by the clerk of said board, sold at public auction to the party of the second part herein, who was the highest bidder therefor, for the sum of $100.00, cash, lawful money of the United States of America, which said sum the party of the second part has paid to the treasurer of the said Madison county:"

Then follows a recital conveying the property in question to respondent.

Appellant insists the jurisdictional facts authorizing the board of county commissioners to sell this property have not been made to appear, and specifies lack of evidence showing the board fixed a minimum price for it; failure to publish the proceedings fixing a minimum price; that no opportunity was given interested parties to protest against such minimum price, if it was fixed, and that no order was made by the board showing due publication of its proceedings that protest of the minimum price fixed had or had not been made, and, if such protest was made, the decision of the board thereon.

This contention is based on a misapplication of I. C. A., sec. 30–713, which requires the board to fix a minimum price on lands acquired by the county through issuance of tax collector's deed, which have been offered for sale and not sold. It is provided in sec. 30–712 that the board "may

sell said lands without further notice at public or private sale, except as otherwise provided in this act, and upon the same terms and conditions and with like effect as sales made under the provisions of section 3423 of the Idaho Compiled Statutes as amended (sec. 30–708).'' Then follows sec. 30–713, relied on by appellant, which requires that before selling any such property the board shall fix a minimum price, and make an order accordingly in its minutes, and that at least thirty days must elapse after the proceedings of the board have been published before such property shall be sold. Said section further provides that any person interested may appear within the thirty-day period and file a protest with the clerk of the board, and after such protest is filed the board shall, before selling the property, give such person a hearing at a time and place to be fixed and after reasonable notice. It is further provided that the board shall determine, from the evidence produced at such hearing, if the property described in the protest is worth more than the minimum fixed in the order, and may raise the minimum in such amount as it may determine, and no sale shall be made for less than ninety per cent of the minimum price fixed.

Sec. 30–713 relates, exclusively, to property offered for sale pursuant to sec. 30–708 and not sold. The property involved herein was offered pursuant to sec. 30–708 and was sold to respondent, and sec. 30–713 has no application to this case.

█ Appellant asserts:

''The evidence affirmatively proves that if notice of the sale of this property was given at all, it was either published in one issue of the Rexburg Standard, namely, on Oct. 15, 1931, instead of for thirty days as required by law, or, the alternative method of giving notice was resorted to, by posting in five public places in the county, . . . . ''

Advertisement of the notice of sale was recited in the deed as above quoted. The law requiring the giving of notice is quoted above from sec. 30–708, and specifies that it be published in a newspaper of the county thirty days

prior to sale. The number of publications to be made during the thirty-day period is not stated.

Respondent introduced the deed in evidence and rested. It is recited in the deed that it had been found and determined by the board the land should be sold pursuant to the provisions of a section of the statute therein named which required the sale be made at public auction at the courthouse door after thirty days' notice thereof, given by publication in a newspaper of the county, and which did not permit notice of the sale to be given by posting. It will be presumed, in the absence of proof to the contrary, the officers did their duty and followed the statute by publishing the notice and not by posting, although the latter method is stated in the deed in the alternative.

In *Meservey v. Gulliford,* 14 Ida. 133, 145, 93 Pac. 780, 784, this court quoted from *Mercer County Traction Co. v. United N. J. R. & Canal Co.,* 64 N. J. Eq. 588, 54 Atl. 819, as follows:

"It is, moreover, a rule of procedure that the burden of proving unlawful or irregular conduct rests upon him who asserts it, since there is no presumption of official irregularity."

Following that is a quotation from *Valley Township v. King Iron B. & M. Co.,* 4 Kan. App. 622, 45 Pac. 660, as follows:

"In the absence of an affirmative showing, it will be presumed that the officers were in the rightful performance of duty and that the conditions existed which authorized them to act as they did."

In *Harper v. City of Conway Springs,* 9 Kan. App. 609, 58 Pac. 488, cited in *Meservey v. Gulliford,* the syllabus, by the court, is:

"The proposition of law which controls the decision in this case is as follows:

"Presumably public officers perform their duties as the law requires; and where it is shown that a levy for taxes was made by the board of county commissioners, which, under some circumstances, would be legal, and, under others, would be excessive and illegal, it will be presumed, in the

absence of evidence showing the existence of conditions that would make it excessive, that the board acted within the law in making the levy, and that it is legal.''

In *Knox County v. Ninth Nat. Bank of New York,* 147 U. S. 91, 13 Sup. Ct. 267, 37 L. ed. 93, the supreme court of the United States had under consideration the question of whether notice of a bond election had been given as directed by order of the board of county commissioners. After reviewing the facts, the court said:

''From these facts it may be presumed that proper notices of the election were given; for it is a rule of very general application, that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it a presumption of the due performance of the prior act.''

In *Stewart v. White,* 19 Ida. 60, 112 Pac. 677, this court had under consideration a tax title based on tax certificates issued pursuant to a law then in force. With respect to the issues in that case the court said:

''The stipulated facts practically leave but one question for decision, and that question is whether the form of tax certificates showed that Nez Perce county was a competitive bidder at the tax sale, thus rendering the certificates void.''

The court further said:

''It does not affirmatively appear from said tax certificates that the county was a competitive bidder at said tax sale, and the presumption is that the officer did his duty and complied with the law in making said sales; that there was no purchaser at said sale who would take said land and pay said taxes, and that the land was therefore offered for sale and struck off to the county.''

*Sims v. Milwaukee Land Co.,* 20 Ida. 513, 119 Pac. 37, involved the right to operate a public ferry. The statutes required, in order to procure a ferry license, that certain preliminary steps be taken, including publication of notice of intention to apply for the license, serving notice on the owner of the landings of the ferry, if the applicant be not the owner, hearing by the board as to public necessity for the ferry, and as to whether the applicant was a suitable

person to operate it, also that a bond be given by the applicant, and that the board make all necessary orders relative to the construction and business of the ferry.

After pointing out that the record made by the board with reference to issuing the ferry license did not show the law had been complied with in these particulars, the court said:

"It will be presumed that public officers perform their duties as the law requires, and where it is shown, as in this case, that a ferry license has been issued to an applicant upon the order of the board of county commissioners in the absence of evidence showing the contrary, the court will presume that the applicant and the board followed the law and pursued the method required by law to authorize the issuing of such license.' When, therefore, the appellant offered the license as proof of his authority to construct and maintain a ferry at the place named in the license, and such license showed upon its face that it was issued under the authority of the board of county commissioners and by their direction, it will be presumed that the license was legally issued and conferred authority on the applicant to construct and maintain a ferry as therein described and was sufficient, *prima facie*, to establish the plaintiff's right to maintain such ferry." (See, also, *Dement v. City of Caldwell*, 22 Ida. 62, 125 Pac. 200.)

Assuming, but not deciding, it was the intention of the legislature to require publication daily, or weekly, during the thirty-day period, and assuming, from the recitation in the deed that the advertisement may, or may not, have been by posting, which does not conform to the statute, that would not justify a presumption of violation of the law by the officer whose duty it was to publish the notice. Proof of giving notice was available to appellant and was not introduced.

This action was commenced pursuant to I. C. A., sec. 9-401, which provides:

"An action may be brought by any person against another who claims an estate or interest in real property ad-

verse to him, for the purpose of determining such adverse claim.''

Appellant alleged, as an affirmative defense, that the deed was void, and relied on the failure to give the notice of sale, required by law, to establish its invalidity. We hold the introduction of the deed, supported by the presumption of obedience to law in giving notice of sale, was sufficient to put him on his proof and that his failure to offer in evidence the affidavit of the giving of notice, which the deed recites was duly filed with the clerk of the board of county commissioners, and which appellant states in his brief was on file with said clerk, raises the presumption that it showed compliance with the law.

■ The law invests the board of county commissioners with jurisdiction and power to sell, at the courthouse door, property belonging to the county not necessary for its use. It is recited in the deed ''the clerk of said board'' sold the property involved in this case, and it is not shown where the sale took place. I. C. A., sec. 30–608, specifies the duties of the clerk, and the last specification therein is as follows: ''Perform all other duties required by law or any rule or order of the board.'' In the absence of evidence to the contrary, it will be presumed the officials, whose duty it was to conduct this sale, conformed to the law; that the sale took place at the courthouse door; that the clerk acted by order of the board in conducting it, and that his acts were the acts of the board of county commissioners.

■ Appellant questions the validity of the deed conveying the property to respondent, in that it was signed by the chairman of the board of county commissioners and not by the entire board, or a majority of its members. A determination of the validity of the deed, in this particular, is not necessary to a decision of the case. Appellant's interest is that of a mortgagee of property sold for taxes. He was entitled to redeem, and the period of redemption was not terminated by the issuance of that deed, but by respondent's bid after the property had been conveyed to the county. Sec. 61–1023 provides:

"The property described in any delinquency entry may be redeemed from tax sale by the owner thereof, or any party in interest, on or after the fourth Monday of January after, and within three years from the date thereof, or until tax deed is issued to the county, and thereafter and up to the time a bid is made therefor at the public sale of such property, . . . . ''

Appellant attacks the tax deeds by which title to this property was conveyed to the county, and specifies that the affidavit by the tax collector of compliance with the statute, with respect to giving notice of the expiration of the time of redemption, is insufficient. The affidavit recites that the tax collector did the things required by law to be done to give notice of the expiration of the period of redemption of a large number of tracts of land, belonging to different owners, but does not specify what was done by way of giving such notice with respect to each tract.

The law in effect at the time notice was given was C. S., sec. 3258, as amended by chap. 33, Sess. Laws, 1925, and required personal service of notice of expiration of the period of redemption on persons in possession or occupancy of the land, and on the record owner thereof if he could be found in the state. It further required the tax collector to send a similar notice, by registered mail, to each mortgagee or to the holder of a recorded lien against such land in every case where such mortgagee or lienholder had previously filed in the office of the tax collector a written request for such notice. The statute also required, if there was no person in actual possession or occupancy of the land and if the person in whose name it stood could not be found in the state, that the tax collector post in a conspicuous place on the land a copy of the notice and publish a notice of all such delinquency entries in the official newspaper printed in the county, and designates the time and number of such publications. Publication of the notice was made.

It was stated in the affidavit, among other recitals:

"That before said deed was made to the county, the tax collector served, or caused to be served written or printed,

or partly written or partly printed notice on the person or persons in actual possession or occupancy of such land or lot, and also the person in whose name the same stands upon the records in the recorder's office, if, upon diligent inquiry he could be found in the state, at least three months and not more than five months before the expiration of the time of redemption, which notice stated when the delinquency entry was made, in whose name the property was assessed, the description of the land or lot, for what year taxed, or specially assessed, when the time of redemption would expire.''

The affidavit does not show, specifically, what notice was given, other than by publication, with respect to the expiration of the period of redemption of the land involved in this case.

Testimony was introduced showing one Liljenquist was employed by the tax collector to, and he did, serve notice of delinquency and expiration of the period of redemption on the record owner and person in actual possession and occupancy of the property. It is not shown that appellant had filed a request entitling him to notice, nor is it shown he was prejudiced by any irregularity in the affidavit made by the tax collector.

In *Andrews v. North Side Canal Co.*, 52 Ida. 117, 126, 12 Pac. (2d) 263, 267, this court said:

''The record owner of the land is not here contesting the validity of the tax deed. Its validity is questioned by cross-appellant, whose claim of interest in the land and water right is grounded upon its liens based on unpaid assessments for maintenance and operation. Where such questions are raised, the burden is cast upon the party seeking to invalidate the tax deed to show that he was prejudiced or injured by noncompliance with such statutes before the tax deed will be declared void.''

It was further said in that opinion (52 Ida. 130, 12 Pac. (2d) 263, 268), quoting from *Williams v. City of Caldwell*, 19 Ida. 514, 521, 114 Pac. 519, 521:

''The actual existence of the fact required to be shown by the affidavit is the thing which confers the jurisdiction.

The affidavit is merely the proof that the jurisdictional facts exist, but the failure to make the proof does not do away with the facts which the proof would show."

After commenting on the failure to show the lienholder had requested notice and holding if he had not he was not entitled to it, the court said (52 Ida. 130, 12 Pac. (2d) 263, 269):

"In view of the foregoing, we think we are correct in holding that by virtue of the provisions of C. S. secs. 3261 and 3262 (I. C. A., secs. 61–1030, 61–1031) the tax deed is *prima facie* evidence of the regularity of all proceedings from the assessment to the execution of the tax deed, and the burden rested upon cross-appellant to overcome the statutory presumption that the tax deed was valid by proof of its invalidity, which it has failed to do."

We find no error in this case. The decree is affirmed. Costs are awarded to respondent.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.