(May 31, 1912.)

## J. A. DEMENT, Appellant, v. CITY OF CALDWELL, Respondent.

[125 Pac. 200.]

SEWER DISTRICT—ORGANIZATION OF—ORDINANCE OF INTENTION—DESCRIPTION OF IMPROVEMENT—REFERENCE TO PLANS AND SPECIFICATIONS — COST OF CONSTRUCTION — PRELIMINARY ESTIMATE OF — DE FACTO OFFICER — PRESUMPTION — SEWER-PIPES — CONNECTION WITH BY LOT OWNER—TWO NONCONTIGUOUS TRACTS IN ONE DISTRICT — EQUITABLE ASSESSMENTS — EVIDENCE — SUFFICIENCY OF — CONTRACT—CONFIRMATION OF ASSESSMENT.

(Syllabus by the court.)

1. Where a city ordinance that declares the intention of the city council to organize a sewer district and to construct a sewer system provides as follows: "The character of the proposed lateral sewer system shall be that of gravity according to the plans and specifica-

tions now in the office of the city engineer of the city of Caldwell, Idaho," *held,* a sufficient compliance with the provisions of subd. 3 of sec. 2353, Rev. Codes, which require that the ordinance of intention shall state "the general character of the proposed sewerage system and sewerage disposal works," and that the reference in the ordinance to the plans and specifications is sufficient to give notice to all parties interested of the character of the proposed system.

2. Under the evidence in this case, *held,* that the plans and specifications of said sewer system had been properly prepared and were on file in the office of the city engineer at the time fixed for the hearing of protests against the organization of such district, and that the engineer who prepared said plans and specifications and superintended the construction of said system was at least a *de facto* city engineer and performed the duties of city engineer.

3. The evidence *held* sufficient to sustain the findings of the court that proper estimates, plans and specifications were made.

4. The presumption is that the officers of a city act according to law in matters pertaining to their office until the contrary is shown.

5. A gross estimate of the cost of the construction of a sewer system inserted in the ordinance of intention is sufficient.

6. The burden of proof is on the party who attacks an assessment, and it will be presumed, in the absence of evidence to the contrary, that the official acts connected therewith were performed regularly and in substantial compliance with the provisions of the statute.

7. Where it is ascertained that under the provisions of an ordinance proper connection cannot be made by lot owners with the sewer system, such ordinance may be amended or changed so as to provide a reasonable method for such connection.

8. A single ordinance may provide for more than one improvement, and a single sewer district may consist of two noncontiguous tracts of land, and as it does not appear from the record that appellant was injured by having these tracts included in one sewer district, he has no cause of complaint.

9. Sec. 2354, Rev. Codes, provides, among other things, that in event the assessment or assessment-rolls therein provided for shall not be confirmed, then the contract for the construction of sewers shall be of no force or effect. Under that provision the contractor took his chances on proceeding to construct sewers prior to the confirmation of such assessment; but when the council did confirm the assessment, such contract was in full force and effect.

APPEAL from the District Court of the Seventh Judicial District for Canyon County.    Hon. Ed. L. Bryan, Judge.

Proceedings to prevent the confirmation of the assessment or assessment-roll in sewerage district No. 4, city of Caldwell. Judgment for the city.  *Affirmed.*

Smith & Scatterday, and Rice, Thompson & Buckner, for Appellant.

The requirement that the ordinance declaring the intention to make the improvement shall contain a description of the proposed improvement is found in the statutes of many of the states.  (*San Jose Imp. Co. v. Auzerais,* 106 Cal. 498, 39 Pac. 859; *Schwiesau v. Mahon,* 128 Cal. 114, 60 Pac. 683; *Fay v. Reed,* 128 Cal. 357, 60 Pac. 927.)

The ordinance of intention must contain a sufficient description of the work, or all the proceedings based thereon will be invalid.  (*McDonnell v. Gillon,* 134 Cal. 329, 66 Pac. 314; *Williamson v. Joyce,* 137 Cal. 107, 69 Pac. 854, 140 Cal. 669, 74 Pac. 290; *Lambert v. Cummings,* 2 Cal. App. 642, 84 Pac. 266; *Crouse v. Barrows,* 156 Cal. 154, 103 Pac. 894; *City of Stirling v. Gault,* 117 Ill. 11, 7 N. E. 471.)

The resolution is the initial step, and by it alone is jurisdiction acquired to subsequently order the work done.  (*Bolton v. Gilleran,* 105 Cal. 244, 45 Am. St. 33, 38 Pac. 881; *Bay Rock Co. v. Bell,* 133 Cal. 150, 65 Pac. 299.)

The land embraced in said sewer district is composed of two areas which are not contiguous.  This action is unwarranted, because a property owner in one of these areas may be compelled to pay his share of the cost of the other area and the cost of construction may be more expensive than his own.  (*Church v. People,* 179 Ill. 205, 53 N. E. 554.)

H. E. Wallace, and John J. Plowhead, for Respondent.

It does not make any difference whether the minutes of the city council show that Richardson was appointed deputy city engineer or not.  They do show that he was appointed as such by Williams at the request of the mayor, that he was considered as such by the city council and paid by them ac-

cordingly. In any event, he was *de facto* city engineer. (28 Cyc. 420, 423; 35 Cyc. 1522; Abbott, Mun. Corp., sec. 656.)

The evidence shows conclusively that the council, instead of setting out in a general way the general character of the sewer as provided by statute in their ordinance of intention, adopted the plans and specifications in the beginning, made reference to them in their ordinance of intention, and subsequently the sewer committee adopted the same *in toto*. The result was that the appellant and others, instead of having only a general description of said sewer on which to base their protests, had a full and complete set of plans and specifications. The council gave the appellant more than the statute requires, and for this he should not complain. (*Haughawaut v. Raymond,* 148 Cal. 311, 83 Pac. 53; *Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519.)

The regularity of an official act will be presumed unless such act is shown to be irregular. (Page & Jones, Taxation by Assessment, secs. 1450, 1466.)

An assessment is presumed to be valid until the contrary is shown. (28 Cyc. 1167, 1180.)

A gross estimate is sufficient. (*Platt v. City of Payette,* 19 Ida. 470, 114 Pac. 25; Page & Jones, Taxation by Assessment, secs. 494, 816.)

"A single ordinance may provide for more than one improvement." (Abbott, Mun. Corp., pp. 868n, 1107n.)

"If to add together the cost of different sewers laid on different streets and to apportion the aggregate cost upon the property fronting on any of such sewers results in assessment which is not materially in excess of the benefits conferred upon any tract of property, such assessment is not invalid." (Page & Jones, Taxation by Assessment, sec. 573; citing *Village of Hinsdale v. Shannon,* 182 Ill. 312, 55 N. E. 327, and other cases.)

The record shows that the contract price for the construction of the sewer was reasonable in amount.

No fraud is alleged in the appeal and no fraud is shown, and there is no ground on which to predicate a constructive

fraud, so that the court cannot go behind the contract. (*Belle-vue Water Co. v. City of Bellevue,* 3 Ida. 739, 35 Pac. 693.)

SULLIVAN, J.—This is an appeal from a judgment of the district court confirming the action of the city council of the city of Caldwell, in confirming the assessment of local lateral sewerage improvement district No. 4 of said city. It involves the legal organization of said district, the construction of a sewer system in said district, the assessment of benefits in said district, and the confirmation of such assessments by the city council.

Said city undertook the construction of said sewer system under the provisions of chap. 14, tit. 13, of the Political Code, and particularly under the provisions of sec. 2353, Rev. Codes. The work was carried on to completion and the system turned over to the city as provided by law. An assessment-roll was prepared and submitted to the council and approved by it on the 31st of October, 1910. The action of the council in that regard was appealed from to the district court in and for Canyon county, and the district court confirmed the action of the council in that regard, with the exception of a few minor matters, and this appeal is from the judgment of the district court.

(1) It is first contended that the ordinance of intention passed by said city council on June 13, 1910, does not sufficiently describe the general character of the proposed improvement as required by paragraph 3 of sec. 2353, Rev. Codes. Sec. 3 of said ordinance is as follows: "The character of the proposed lateral sewer system shall be that of gravity according to the plans and specifications now in the office of the city engineer of the city of Caldwell, Idaho." This court held in *Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519, that where a city ordinance declaring the intention of the council to organize a sewer district and construct a sewer system states that "the character of the proposed lateral system shall be that of gravity and according to the plans and specifications now on file in the office of the city engineer," it is a sufficient compliance with the

terms of subd. 3 of said sec. 2353, Rev. Codes, which requires that the ordinance of intention shall state the "general character of the proposed sewerage system and sewerage disposal works"; that the reference to the plans and specifications is sufficient to give notice to all parties interested of the general character of the proposed works. The decision in that case virtually disposes of the question here under consideration. Under the provisions of subd. 3 of sec. 2353, a detailed statement of the plans and specifications and the material out of which the system is to be constructed need not be inserted in the ordinance, as anyone desiring information in regard thereto may ascertain it from the plans and specifications, if they have notice where those are kept on file.

(2) It is contended that the city engineer did not draw any plans or specifications of said sewer system; that he never resigned as city engineer, and most of the duties of that office were performed by one Richardson, who was not officially appointed, who took no oath of office and who gave no bond.

It appears from the record that the city engineer, Williams, appointed one Richardson deputy city engineer. It also appears that said Williams himself made the preliminary estimate for the bids for the construction of said sewer; that said Richardson performed the duties of city engineer during the construction of the sewer, at the request of the mayor; that he acted as city engineer during that period of time and drew the salary of the engineer for said services, the city engineer being away from the city and engaged in other work. Under the facts of this case it makes no difference whether the minutes of the city council show that Richardson was duly appointed as deputy city engineer or not. The record shows that Richardson acted as and was considered city engineer by the city council and mayor. In any event, he was a *de facto* engineer and performed the duties of the city engineer. There is no charge of any fraud or anything of that kind in connection with this matter. (28 Cyc. 420; 35 Cyc. 1522; Abbott's Municipal Corp., secs. 656, 659.) Under the provisions of sec. 2354 the sewer committee has authority to appoint an engineer.

(3) It is also contended by counsel for appellant that because the city engineer did not deliver any plans and specifications to his successor, that it must necessarily follow that no plans or specifications were ever in existence. We cannot agree with that contention, as the records show that such plans and specifications were made and on file in the city engineer's office, at least as early as June 27, 1910, at the time fixed for hearing protests against the organization of such district and the proposed improvements and works to be constructed. At that hearing no protests whatever were filed, and the protestants herein do not claim that they have been misled or damaged in any way by reason of no plans or specifications being on file in the city engineer's office, nor do they produce any proof whatever showing that such plans and specifications were not on file in said office at said date. The appellant introduced evidence to show that city engineer Williams did not turn over to his successor the plans and specifications used in the construction of said sewerage system, but that is not proof that such plans and specifications were not on file in his office at the date noticed for the hearing of protests against the organization of such district.

(4) It is next contended that no estimate of the cost of said system was made by the city engineer as was required by sec. 2201, Rev. Codes. There is no evidence in the record to show that the city engineer did not make the detailed estimate required by the provisions of that section. Williams, the city engineer, testified that he believed that he made the preliminary estimates for the bids before he turned the matter over to Richardson, and it appears from the record that Richardson filled the blank in the ordinance, when requested to do so, and placed the amount at $10,000. We think the evidence is sufficient to sustain the finding of the court that such estimates, plans and specifications were made. It is presumed that the officers of the city acted according to law in all matters until the contrary is shown, and it is incumbent upon the appellant to show that no estimate was made and that the city council acted in the matter without the necessary details, which he failed to do.

The fourth section of Ordinance No. 173, approved by the mayor on June 14, 1910, is as follows: "The estimated cost of said improvement district is the sum of $10,000." That ordinance was published in the official paper and the property owners were thus given notice of the estimated cost of the sewer system. It was not necessary to place an estimate in detail in said ordinance. A gross estimate of the cost was sufficient. (*Platt v. City of Payette*, 19 Ida. 470, 114 Pac. 25.) However, as before stated, no protest whatever was filed against the organization of said district, and we think the evidence sufficiently shows the plans and specifications for said improvements were on file in the engineer's office on the date noticed for the hearing of said protest, to wit, June 27, 1910. The burden of proof is on the party who attacks an assessment. It will be presumed, in the absence of evidence to the contrary, that official acts were performed regularly and in substantial compliance with the statute. (Taxation by Assessment, by Page & Jones, sec. 1466; 28 Cyc. 1167, 1168.)

(5) It is next contended that connections with said system cannot be made in compliance with sec. 14 of Ordinance No. 180. Said section requires sewer-pipes in the yards to be of the best quality of vitrified pipes with cement joints, and "they shall not be laid nearer than two feet on the exterior of the wall nor less than two feet below the surface of the ground, nor will they be allowed in bad or made ground. In all such cases sewers beneath the ground shall be of cast-iron pipes." That provision is construed by counsel for the city to mean that if it is impossible to secure drainage by placing the pipe two feet under the ground, then cast-iron pipe must be used and not vitrified pipe. That construction may be correct, but it seems to us a little strained; but it appears that as some controversy had arisen over the proper construction of that ordinance, the council amended said section of said ordinance by enacting Ordinance No. 192. That ordinance provides, among other things, that where a sewer is less than two feet below the surface of the ground, cast-iron pipe placed to as great a depth as possible

in the ground to insure sufficient drainage shall be used in the yards. Under the provisions of that ordinance, connection can be made by the lot owner with the sewer in said district. The police power authorizing the city to enact ordinances requiring a lot owner to connect with the sewer must provide a reasonable method for such connection, and it could not force a person to connect with a sewer in a way that would not drain the sewage from the lot or in a way that would not accomplish the purpose for which the sewer was constructed. If a lot owner receive no benefit, he certainly cannot be assessed for a benefit.

It is suggested by counsel that sec. 119 of Ordinance No. 180 does not admit of all persons making connection with the sewer, for the reason that one-fourth of an inch grade per foot is too great. It appears from the evidence that that refers to pipes in buildings and not to pipes laid from the building to the sewer, and that the latter pipes may have a grade of one-fourth inch to ten feet.

(6) It is next contended that the land embraced in said sewer district is composed of two areas which are not contiguous, and that the sewerage system of each of said areas has a separate and distinct outlet. The record shows that said tracts have one and the same outlet, and in order to give any force and effect to this objection, it would be necessary for the appellant to show that he was in some manner injured by the creation of such district in the manner in which it was created. Counsel seem to assume that the mere formation of this district in the way it was formed precludes the sewer committee from apportioning the assessments equitably, but there is nothing in the record to show that the assessments were inequitably made or not in accordance with the benefits received. The sewer committee evidently concluded that the benefits were about equal and that each property owner should be assessed accordingly. There is nothing in the record to show that appellant was prejudiced by forming the district in the way it was organized. There is no doubt but that a single ordinance may provide for more than one improvement. (See Abbott's Munic. Corp., pp. 868 (note), and

1107 (note).)   It is stated in Taxation by Assessment, by Page & Jones, sec. 572, that if to add together the cost of different sewers laid on different streets and to apportion the aggregate costs upon the property fronting on any of such sewers results in assessment which is not materially in excess of the benefits conferred upon any tract of land, such assessment is not invalid.   The similarity of the improvement proposed to be made and the situation of the property to be assessed with respect to it, affords a more satisfactory test as to whether the two tracts might be embraced in a common scheme as one improvement than their actual and physical contact with each other.   (*Village of Hinsdale v. Shannon,* 182 Ill. 312, 55 N. E. 327.)   In the case at bar the improvements to be made in each tract were of the same kind and character, and there is nothing to show that there was any difference in the physical features of the country or in the soil to be excavated for the laying of the pipes.   It does not appear from the record that the appellant was injured by having these tracts included in one ordinance, and for that reason he cannot recover on that ground.

(7) As to the condition of the sewer.   It is contended that the sewer-pipes were not properly laid and are not of sufficient depth in the ground, and that they leak and offensive odors arise from such leakage.   There is a substantial conflict in the evidence upon these questions.   Several experts in laying sewers testified as to the sufficiency of said sewers for the purposes intended.   It appears that there has been considerable feeling over this matter and that at two different times at a certain point the sewer had been stopped up.   At one time a gunny-sack filled with straw or hay was thrust into the eight-inch sewer-pipe, and at another, a piece of oil-cloth, large enough to choke the sewer, had been thrust into it, and that at those times the cement in some of the joints of the sewer-pipe had been broken and certain ground flooded.   This was not caused by the defective construction of the sewer system.   The evidence shows that the sewer-pipes came to the surface of the ground in places.   But there is evidence in the record to show that in such places the

ground was low and on a proper grade would have to be filled, and that the pipes in such places had been covered with loose dirt, as required by the contract. We think it sufficiently appears from the evidence that when the lots along such pipe are graded to the height contemplated, there will be no difficulty along that line.

The great weight of the testimony shows that the contract price for the construction of the sewer was reasonable in amount. No fraud is alleged and no fraud is shown, and it is not for this court to say that the contract price was too high. (See *Bellevue Water Co. v. City of Bellevue,* 3 Ida. 739, 35 Pac. 693.)

It appears ·from the testimony that two members of the board of county commissioners of Canyon county and also members of the board of health in that county made an examination of said sewer, and they testified that they found it in good shape so far as its construction was concerned, and in their opinion it was a benefit to all of the property in said sewer district.

Appellant filed his protest against the confirmation of the assessment on October 22, 1910. The sewer system at that time was nearly completed, and it appears that the first intimation said council had that any person was dissatisfied was when said protest was filed. Appellant knew what the estimated cost of construction of said sewer system was, and he certainly knew that he would have to pay his proportionate part of it if he had lots in that district. If the contract price was within the estimated cost, appellant cannot now be heard to complain that the total cost of his sewer is too high. He ought to have appeared on June 27, 1910, and entered his protest at that time against the estimated cost if he thought it excessive. On October 22, 1910, he filed his protest, as above stated, against the confirmation of the assessment, and it is contended by counsel for appellant that the provisions of sec. 2354, Rev. Codes, clearly point out to the contractor how and when he may safely proceed with his work. The provisions referred to are as follows:

"No contract herein provided for shall go into effect, in so far as the committee or city, town or village are concerned, to be binding upon it or them, until the assessment herein provided for shall be confirmed; and in the event the assessment or the assessment-rolls herein provided for shall not be confirmed, then such contracts shall be of no further force or effect."

Under those provisions the contractor takes his chance if he proceeds with his contract before the assessment is confirmed, and if it is not confirmed, then the contract is of no further force or effect. But in the case at bar, the assessment was confirmed, and therefore said contract has force and effect. If the contractor wanted to take his chances and not await such confirmation, he, of course, could proceed. It was not absolutely necessary for him to await the action of the council in that regard. The fact that he did proceed would not of itself render the contract of no force or effect, and when the council confirmed the assessment, the contract was in full force and effect.

Upon the material questions raised on this appeal there is a substantial conflict in the evidence, and there is substantial evidence to support the findings of fact and judgment entered by the trial court. The judgment must therefore be affirmed, and it is so ordered, with costs of this appeal in favor of the respondent city.

Stewart, C. J., and Ailshie, J., concur.

Petition for rehearing denied.